***NOT FOR PUBLICATION***

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| AMARA KALAWA and ALFREDA BANGURA,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA, U.S. GEN'L SERVS. ADMIN., FEDERAL BUREAU OF INVESTIGATION, MICHAEL WITKOWSKI, COURTNEY HUCKS, EMMANUEL MANLEY, JUSTIN MANLEY, JOHN/JANE DOE 1-10, and/or ABC CORP 1-10,<br><br>Defendants. | Civil Action No. 19-cv-16089-FLW-DEA<br><br>OPINION |

**WOLFSON, Chief Judge**:

This matter arises out of a car accident between federal employee Michael Witkowski ("Witkowski") and Amara Kalawa and Alfreda Bangura ("Kalawa" and "Bangura" or, collectively, "Plaintiffs"), who allege that Witkowski injured them when he rear-ended a car in which they were passengers. Plaintiffs brought suit under the Federal Tort Claims Act ("FTCA") against the United States, the U.S. General Services Administration ("GSA"), the Federal Bureau of Investigations ("FBI"), and Witkowski (collectively, "Defendants").[1] Defendants move to dismiss the Complaint under Fed. R. Civ. P. 12(b)(5) or, in the alternative, transfer the case to the

---

[1] Plaintiffs also name three private parties as Defendants—Emmanuel Manley, Justin Manley, and Courtney Hucks—along with various fictitious ones. It is unclear whether any private Defendant has been properly served, and none has filed an appearance.

1

United States District Court for the District of Maryland. For the following reasons, Defendants' Motion to Transfer is **GRANTED**.

**I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

For the purposes of this motion, the Court sets forth only the facts that it deems relevant to the parties' dispute over whether to transfer venue. On October 6, 2017, while driving a government-owned car on federal land in Maryland, Witkowski allegedly rear-ended a vehicle in which Kalawa and Bangura were passengers.[2] *See* Def.'s Mot., at 4-5. Bangura received medical care at the scene of the accident, and it appears she was transported to a local hospital. Subsequently, both Plaintiffs received additional medical treatment in New Jersey. On July 30, 2019, Plaintiffs filed a Complaint in this Court, asserting claims under the FTCA against Defendants. At the time of the accident, each resided in New Jersey. By the time they filed their Complaint, however, the United States had deported Kalawa to Sierra Leone. According to Plaintiffs, Bangura remains a New Jersey resident, and Kalawa still considers New Jersey his domicile.

On March 6, 2020, Defendants filed a Motion to Dismiss for untimely service, claiming that Plaintiffs failed to send a copy of their Complaint and summons to the United States Attorney General, as required by Fed. R. Civ. P. 4(i)(1)(B), within the 90-day time period specified in Fed. R. Civ. P. 4(m). In the alternative, they seek to transfer the case to the District of Maryland because that is where the accident occurred, Maryland tort law applies, and New Jersey courts are the busiest in the nation. Plaintiffs oppose the transfer and cross-move to "enlarge the time period for service and deem the government defendants served." *See* Opp. Br., at 5.

---

[2] The parties do not dispute that Witkowski was acting within the scope of his employment at the time of the accident.

**II. STANDARD OF REVIEW**

The Court may transfer an action to any venue "where [it] might have been brought . . . for the convenience of the parties, in the interests of justice." 28 U.S.C. § 1404(a). The decision to transfer is within "the sound discretion of the trial court." *See Teva Pharmaceuticals USA, Inc. v. Sandoz Inc.*, No. 17-275, 2017 WL 2269979, at *4 (D.N.J. May 23, 2017); *Days Inns Worldwide, Inc. v. RAM Lodging, LLC*, No. 09–2275, 2010 WL 1540926, at *2 (D.N.J. April 14, 2010); *Cadapult Graphic Sys. v. Tektronix, Inc.*, 98 F. Supp. 2d 560, 564 (D.N.J. 2000). In deciding a motion to transfer under § 1404(a), the Court first determines whether the transferee district is one in which the action "might have been brought." *See Solomon v. Cont'l Am. Life. Ins. Co.*, 472 F.2d 1043, 1045 (3d Cir. 1973). The transferee district must be a proper venue under the relevant venue provision and it must have personal jurisdiction over the defendants. *See Shutte v. Armco Steel Corp.*, 431 F.2d 22, 24 (3d Cir. 1970); *Control Screening, LLC v. Integrated Trade Sys., Inc.*, No. 10-499, 2011 WL 3417147, at *4 (D.N.J. Aug. 3, 2011); *Teva*, 2017 WL 2269979, at *5.

If the transferee district is proper, the Court then considers whether convenience and fairness weigh in favor of transfer on an individualized, case-by-case basis. *See Lawrence v. Xerox Corp.*, 56 F. Supp. 2d 442, 450 (D.N.J. 1999); *Calkins v. Dollarland, Inc.*, 117 F. Supp. 2d 421, 428 (D.N.J. 2000) (noting the inquiry "is flexible and must be made on the unique facts of each case"). The Third Circuit has enumerated certain private and public factors that bear on this analysis. *See Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879, 883 (3d Cir. 1995). However, the *Jumara* factors are not exhaustive, "[t]here is no rigid rule governing a court's determination," and "each case turns on its facts." *Lacey v. Cessna Airfract Co.*, 862 F.2d 38, 43 (3d Cir. 1988) (internal quotations omitted); *Solomon*, 472 F.2d at 1045 ("[T]he district court is vested with a large discretion."); Control *Screening*, 2011 WL 3417147, at *4 (same, but "broad" discretion). The

moving party has the burden of demonstrating that transfer is not only adequate but more appropriate. *See Myers v. American Dental Ass'n*, 695 F.2d 716, 732 (3d Cir. 1982) (Garth, J., concurring in part and dissenting in part); *Yocham v. Novartis Pharms. Corp.*, 565 F. Supp. 2d 554, 557 (D.N.J. 2008) (noting a transfer motion "must not be lightly granted") (further citations omitted); *Hoffer v. InfoSpace.com. Inc.*, 102 F. Supp. 2d 556, 572 (D.N.J. 2000) (collecting cases).

### III. DISCUSSION

Defendants move to dismiss this case for untimely service. In the alternative, they move to transfer it to the District of Maryland, arguing that Maryland is the more appropriate venue because the car accident occurred there, its tort law applies, and New Jersey courts are particularly congested. Plaintiffs argue that, under § 1402(b), they have the right to file their claims in New Jersey, because Bangura resides in the state and Kalawa considers it his domicile even though he was deported.

While a "question of personal jurisdiction . . . is typically decided in advance of venue . . . a court may reverse the normal order" and decide venue first, for "neither . . . is fundamentally preliminary in the sense that subject-matter jurisdiction is," nor an "absolute stricture[] on the court." *Leroy v. Great Western United Corp.*, 443 U.S. 173, 180 (1979) (citing C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure § 3801, pp. 5-6 (1976)).[3] Critically, a defect in service, as Defendants allege here, *is* a defect in personal jurisdiction, "which goes to the court's power to exercise control over the parties." *Id.* Because the United States has sufficient minimum contacts in every forum state, a court establishes the authority to adjudicate a case against the

---

[3] The Supreme Court affirmed a similar sequence in *Goldlawr, Inc. v. Heiman*, 369 U.S. 463 (1962) (upholding a district court's decision to transfer a case under 28 U.S.C. § 1406(a) without deciding whether it had personal jurisdiction). *See also United States v. Berkowitz*, 328 F.3d 358 (3d Cir. 1964) (reversing a district court's decision not to transfer a case under 28 U.S.C. § 1404(a) because it lacked personal jurisdiction).

government through service of process itself. *See Sanders v. United States*, No. 14-7157, 2015 WL 248439, at *3 (D.N.J. Jan. 20, 2015) ("Before the District Court can exercise personal jurisdiction over the United States, the procedural requirements of service of a summons must be satisfied."); *see also Omni Capital Int'l, Ltd. V. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987) ("Service of summons is the procedure by which a court having venue and jurisdiction of the subject matter of the suit asserts jurisdiction over the person of the party served."). The Court, accordingly, decides whether to transfer Plaintiffs' claims to the District of Maryland without reaching the question whether Plaintiffs made timely service on the United States. *See Control Screening*, 2011 WL 3417147, at *4.

With respect to transfer, Defendants contend that, because Kalawa is no longer a New Jersey resident, New Jersey is an improper venue under 28 U.S.C. § 1402(b). That provision states that FTCA claims must be brought either "in the judicial district where the plaintiff resides or wherein the act or omission complained of occurred."[4] In turn, according to Defendants, 28 U.S.C. § 1406(a) requires the Court to dismiss Kalawa's claim unless, "in the interests of justice," it may be transferred to Maryland, which is the place of the accident and the only other proper venue under § 1402(b). *See* Def. Mot., at 8-10. They also urge the Court to transfer Bangura's claim under § 1404(a), since her claim arises out of the same event as Kalawa's and it would waste judicial resources to try them separately.[5] *Id.* at 10. Plaintiffs do not dispute that venue in Maryland

---

[4] Because the FTCA contains its own venue provision, the general venue provision found at 28 U.S.C. § 1391(a), which states that venue is proper in "a judicial district where a substantial part of the events or omissions giving rise to the claim occurred," is not applicable here.

[5] Defendants add that, if the Plaintiffs' claims were severed, they would be subject to multiple discoveries, two U.S. Attorney's Offices would defend the government, and there might be two trials. The Court does not consider these arguments because all parties agree that it does not serve the interests of judicial economy to sever Plaintiffs' claims.

would be proper—*if they chose to file there*. They also do not dispute that their claims should be "consolidated."[6] *See* Opp. Br., at 14. Rather, Plaintiffs argue that New Jersey, not Maryland, is the more appropriate venue under § 1402(b), since Bangura resides there and it is Kalawa's domicile.

Kalawa plainly is not domiciled in New Jersey. By definition, being deported means that Kalawa cannot form a lawful intent to be in any state. *See, e.g.*, *Lok v. I.N.S.*, 681 F.2d 107, 109-10 (2d Cir. 1982) ("Lok established his lawful domicile only when his intent to remain was legal under the immigration laws . . . . As a seaman who had overstayed his 29 days, Lok was in the United States illegally. He could not establish lawful domicile . . . . The requirement that Lok's domicile be 'lawful' is more than a formality; it is a commandment installed in the 1952 Immigration and Naturalization Act as a deliberate change from prior law."); *see also Elkins v. Moreno*, 435 U.S. 647, 665-66 (1978). As such, his claim is improperly venued in New Jersey, and Maryland is the only appropriate venue under § 1402(b). While the parties did not discuss whether Kalawa may anchor his claim to Bangura's to establish venue in this district, and regardless of whether New Jersey is a proper venue based on that theory, the Court has broad discretion to transfer Plaintiffs' entire suit to Maryland under § 1404(a), and will do so.

In determining whether to transfer a suit under § 1404(a), the threshold question is whether the transferee venue is one in which the suit "might have been brought." 28 U.S.C. § 1404(a); *Solomon*, 472 F.2d at 1045; *Shutte*, 431 F.2d at 25; *Control Screening*, 2011 WL 3417147, at *4. There is no question that Plaintiffs could have filed their suit in the District of Maryland in the first

---

[6] This is in line with the Third Circuit's observation that it is inefficient to try like claims in separate fora. *See White v. ABCO Eng'g Corp.*, 199 F.3d 140, 144–45 (3d Cir. 1999); *see also Continental Grain Co. v. Barge FBL–585*, 364 U.S. 19, 26 (1960) ("To permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that [Section] 1404 was designed to prevent.").

place. *See* 28 U.S.C. § 1402(b). The Court therefore moves to the second step of the transfer analysis: whether the balance of private and public interest factors here favors transfer. *See Jumara*, 55 F.3d at 879; *Franklin U.S. Risking Dividends Fund v. American Intern. Group, Inc.*, No. 13-05805, 2014 WL 1555133, at *3-4 (D.N.J. April 14, 2014), *aff'd*, 2014 WL 3748214, at *3. Private interest factors include: "(1) plaintiff's forum preference as manifested in the original choice; (2) the defendant's preference; (3) whether the claim arose elsewhere; (4) the convenience of the parties as indicated by their relative physical and financial condition; (5) the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and (6) the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum)." *Jumara*, 55 F.3d at 879. Public interest factors include: "(1) the enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious, or inexpensive; (3) the relative administrative difficulty in the two fora resulting from court congestion; (4) the local interest in deciding local controversies at home; (5) the public policies of the fora; and (6) the familiarity of the trial judge with the applicable state law in diversity cases." *Id.* at 879–80. The *Jumara* factors reflect the purpose of § 1404(a), which "is to avoid the waste of time, energy and money and, in addition, to safeguard litigants, witnesses, and the public against avoidable inconvenience and expense." *Rappoport v. Steven Spielberg, Inc.*, 16 F. Supp. 2d 481, 497 (D.N.J. 1998); *Liggett Grp. Inc. v. R.J. Reynolds Tobacco Co.*, 102 F. Supp. 2d 518, 525-26 (D.N.J. 2000).

A. *Private Interest Factors*

The primary private interest factor weighing against transfer is Plaintiffs' choice to file their suit in New Jersey. "In this Circuit, a plaintiff's choice of forum is of 'paramount concern' in deciding a motion to transfer venue." *Nat'l Micrographics Sys., Inc. v. Canon U.S.A., Inc.*, 825 F.

Supp. 671, 681 (D.N.J. 1993) (quoting *Sandvik, Inc. v. Cont'l Ins. Co.*, 724 F. Supp. 303, 307 (D.N.J. 1989) (quoting *Shutte*, 431 F.2d at 25)); *Shore Slurry Seal, Inc. v. CMI Corp.*, 964 F. Supp. 152, 156 (D.N.J. 1997) (same); *Newcomb v. Daniels, Saltz, Mongeluzzi & Barrett. Ltd.*, 847 F. Supp. 1244, 1246 (D.N.J. 1994) (giving plaintiff's choice of forum "significant weight"). The choice to file in a home-state forum deserves particular deference. *See Lony v. E.I. Du Pont de Nemours & Co.*, 886 F.2d 629, 633 (3d Cir. 1989); *American Tel. & Tel. Co. v. MCI Communications Corp.*, 736 F. Supp. 1294, 1306 (D.N.J. 1990) [hereinafter "*AT&T*"] (noting "the greatly enhanced deference due to a plaintiff suing in its home state"). "[U]nless the balance is strongly tipped in favor of the defendant, the plaintiff's choice of forum should not be disturbed." *Ricoh Co, Ltd. v. Honeywell, Inc.*, 817 F. Supp. 473, 480 (D.N.J. 1993) (internal quotations omitted); *Lacey*, 862 F.2d at 43 ("[T]he plaintiff's choice of forum should rarely be disturbed, unless the balance of factors is strongly in favor of the defendant.").

Still, Plaintiffs' choice of forum is by no means "dispositive . . . nor is it the only factor to be considered." *AT&T*, 736 F. Supp. at 1306. "The preference for honoring a plaintiff's choice of forum is simply that, a preference; it is not a right." *E.I. Du Pont de Nemours & Co. v. Diamond Shamrock Corp.*, 522 F. Supp. 588, 592 (D. Del. 1981). In particular, even where a plaintiff has selected a home-state forum, "deference is curbed" if the forum "has little connection with the operative facts of the lawsuit." *Tischio v. Bontex, Inc.*, 16 F. Supp. 2d 511, 521 (D.N.J. 1998); *Honeywell*, 817 F. Supp. at 481 ("When the central facts of a lawsuit occur outside the forum state, a plaintiff's section of that forum is entitled to less deference."); *Liggett Grp.*, 102 F. Supp. 2d at 530 ("One situation where deference to the choice of forum is curbed is where . . . the choice of forum . . . has little connection to the operative facts."); *In re Consolidated Parlodel Litigation*, 22 F. Supp. 2d 320, 323-24 (D.N.J. 1998) ("The plaintiff's interest decreases even further where the

central facts of a lawsuit occur outside the chosen forum.") (internal quotations omitted); *Nat'l Property Investors VIII v. Shell Oil Co.*, 917 F. Supp. 324, 327 (D.N.J. 1995) ("When the central facts of a lawsuit occur outside of the chosen forum, plaintiff's choice of forum is accorded less weight."). Indeed, to decide a transfer motion on plaintiff's choice of forum alone would "collapse any difference between [S]ections 1404 and 1406." *Security Sav. Bank, SLA v. Green Tree Acceptance, Inc.*, 703 F. Supp. 350, 353 (D.N.J. 1989) (internal quotations omitted); *Shell Oil*, 917 F. Supp. at 327 ("Plaintiff's choice of forum is not accorded the decisive weight [it] enjoys under *forum non conveniens*."). Moreover, because the "determination of how much weight each factor should be given in the transfer analysis is [itself] discretionary," *see Franklin*, 2014 WL 3748214, at *4, courts have implicit authority under *Jumara* to disregard a plaintiff's chosen forum if "all relevant factors" indicate that "on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum." *Jumara*, 55 F.3d at 879.

Although Plaintiffs, here, chose to file their claims in New Jersey rather than Maryland, Defendants have presented sufficient countervailing factors to overcome "the presumption in favor of [that] choice." *Shore*, 964 F. Supp at 156; *Tischio*, 16 F. Supp. 2d at 521; *Lacey*, 862 F.2d at 45; *Shell Oil*, 917 F. Supp. at 327; *Honeywell*, 817 F. Supp. at 480; *Hudson United Bank*, 832 F. Supp. at 888; *Control Screening*, 2011 WL 3417147, at *5. Plaintiffs simply cannot avoid the fact that their claims arise from conduct occurring entirely in Maryland.[7] They insist that this is "the only connection" to Maryland, but it is a substantial one, which on balance overrides their choice to file in New Jersey. *See Tischio*, 16 F. Supp. 2d at 521 (overriding plaintiff's choice of forum because "[t]he Complaint demonstrates the events giving rise to the instant action . . . occurred

---

[7] Defendants also argue that venue is not appropriate in New Jersey because the private defendants named in Plaintiffs' lawsuit are not New Jersey residents. However, in their Complaint, Plaintiffs do not allege sufficient facts to establish the citizenship of the private defendants.

9

predominantly, if not entirely, in Virginia"); *Andrews v. Norfolk Southern Corp.*, No. 07-1131, 2008 WL 687255, at *3 (D.N.J. Mar. 4, 2008) (overriding plaintiff's choice of forum because "[s]trongest among [the private interest factors] is that the claim arose elsewhere"). Indeed, Maryland "contains the center of gravity of the dispute, its events, and transactions." *Park Inn Int'l, L.L.C. v. Mody Enterprises*, 105 F. Supp. 2d 370, 377 (D.N.J. 2000).

Plaintiffs further point out that sometime after the accident, Kalawa and Bangura received medical care in their home state. *See* Opp. Br., at 18, 20. That connection, even if true, does not account for the fact that Defendants made no "decisions . . . in New Jersey" at all, much less "actionable" or "operative" ones. *Tischio*, 16 F. Supp. 2d at 521. Rather, Plaintiffs have asserted an attenuated, incidental nexus to New Jersey, based exclusively on their own conduct, which hardly carries weight in determining whether to transfer venue. *See Kirschner Bros. Oil, Inc. v. Pannill*, 697 F. Supp. 804, 807 (D. Del. 1988) (stating that minimal asserted connections, such as "the incorporation of some of the Defendants in Delaware[,] is of little consequence"); *Andrews*, 2008 WL 687225, at *3 ("[S]uch an attenuated connection . . . substantially undercuts the weight of [plaintiff's] choice."). That nexus is also offset by the fact that Bangura received emergency medical transportation and care in Maryland.

Other private interest factors also favor transfer. Chief among them is that Maryland is not more physically or financially inconvenient for either Plaintiff. Kalawa is already litigating this matter from Sierra Leone, so it is unclear how transferring it to Maryland could possibly make that task more difficult or expensive. Perhaps recognizing this fact, Plaintiffs focus on Bangura's resources, claiming that she cannot prosecute her claim in Maryland because she cannot afford to travel there. *See* Opp. Br., at 14, 16. However, they do not explain why litigating in Maryland, which is geographically not too distant from New Jersey, would impose any great financial

10

hardship that is "unique or unusual." *See Intellectual Ventures I LLC v. Altera Corp.*, 842 F. Supp. 2d 744, 751 (D. Del. 2012). Nor do they address the obvious fact that Bangura has already traveled to Maryland, as the accident with Witkowski took place there. In short, Plaintiffs fail "to indicate what expenses will be affected" for Bangura or how she will be "unable to carry" them. *Tischio*, 16 F. Supp. 2d at 525 (transferring an action where the plaintiff did not offer evidence of financial or physical inability to travel to Virginia); *Shore*, 964 F. Supp. at 157 (same, but to Oklahoma). Even taking Bangura's inability to pay for travel at face value, courts in this district have transferred cases farther away despite evidence of serious physical and financial inconvenience, such as indigency and disability, when other factors favor transfer, which is the case here. *See, e.g.*, *Govan v. United States*, No. 09-00491, 2009 WL 10664440, at *4 (D.N.J. Dec. 22, 2009) (transferring a case from New Jersey to Georgia even though the "plaintiff likely faces some difficulty in traveling to [Georgia] because he is indigent and allegedly disabled").

The remaining private interest factors are neutral. Neither party presents any evidence that any fact witness or expert would be unavailable in one forum rather than another, as *Jumara* requires. *See also Franklin*, 2014 WL 1555133, at *8 (stating that "merely being inconvenienced" is not enough); *Days Inn Worldwide*, 2010 WL 1540926, at *7 ("There is no evidence that any witness for either party would be totally unavailable . . . as opposed to merely being inconvenienced by the distance."). Indeed, given the proximity of the venues, it would not be inconvenient for the parties' witnesses to travel between them. The location of medical records is likewise neutral, because they could be subpoenaed and transmitted to either venue. *See Andrews*, 2008 WL 687255, at *3 ("[T]he fact that [relevant] documents could be easily transferred . . . does not weigh heavily against transfer."); *Franklin*, 2014 WL 1555133, at *9 ("Ultimately, the parties have not submitted any evidence that the transportation of documents to either forum would be

11

unduly burdensome or expensive."); *see also Trilegiant Loyalty Solutions, Inc. v. Maritz*, No. 04-360, 2005 WL 441077, at *2 (D. Del. Feb. 15, 2005) (implying that the location of books and records does not cut either way when they could be produced in either venue); *Tradimpex Egypt Co. v. Biomune Co.*, 777 F. Supp. 2d 802, 810 (D. Del. 2011) (noting that "technology [may] make[] the physical location of documents relatively unimportant").

On balance, the Court finds that the private interest factors favor transfer. Plaintiffs' choice of forum is the main opposing factor, but it is sufficiently offset by the fact that their claims have no connection to New Jersey "besides the fortuitous event that [they] reside[] there." *Govan*, 2009 WL 10664440, at *4.

   B. *Public Interest Factors*

Turning to the public interest factors, the Court again considers "the locus of the alleged culpable conduct . . . and the connection of the conduct to plaintiff's chosen forum." *Lacey*, 862 F.2d at 48 (internal quotations omitted); *Tischio*, 16 F. Supp. 2d at 526. Here, both considerations support transfer. The accident occurred in Maryland and it bears no meaningful relationship to New Jersey other than the happenstance that Bangura resides there. Maryland courts have a greater interest in adjudicating such cases than do New Jersey courts, *see Hardaway Constructors, Inc. v. Conesco*, 583 F. Supp. 617, 621 (D.N.J. 1983) ("New Jersey has very little, if any, interest in this case."), and this district strives to preserve its limited judicial resources. Similarly, if this litigation proceeds to trial, "the burden of jury duty ought not to be imposed upon the people of a community which have no relation to the litigation." *Honeywell*, 817 F. Supp. at 486 (quoting *Ferens v. John Deere Co.*, 494 U.S. 516, 529-30 (1990)); *Govan*, 2009 WL 10664440, at *4 ("New Jersey jurors should not be burdened with adjudicating a matter concerning conduct which occurred in Georgia.").

Defendants also assert that transfer is appropriate because Maryland tort law will apply. "An important public interest factor [in the transfer analysis] is the desire to have cases tried before judges familiar with the applicable law." *Tischio*, 16 F. Supp. 2d at 526; *Hudson United Bank*, 832 F. Supp. at 888; *Sandvik*, 724 F. Supp. at 307. Often, in cases arising under federal statutes such as the FTCA, all federal courts are presumed to be equally "familiar with the applicable" federal law. *See Liggett Grp.*, 102 F. Supp. 2d at 537 (antitrust); *Honeywell*, 817 F. Supp. at 486 (patent); *Teva*, 2017 WL 2269979, at *8 ("There is no question that . . . the judge in either forum would be appropriately familiar with the applicable [patent] law."). The circumstances of the present case warrant a departure from that presumption. Here, a federal court must apply the law of Maryland, the state in which the alleged negligent act occurred. *See* 28 U.S.C. § 1346(b)(1) (providing that the United States may be liable to a plaintiff in tort under the FTCA "if a private person[] would be liable to the claimant in accordance with the law of the place where the act or omission occurred"); *Levin v. United States*, 568 U.S. 503, 507 (2013) ("Substantively, the FTCA makes the United States liable . . . under the law of the place where the tort occurred."); *Raplee v. United States*, 842 F.3d 328, 331 (4th Cir. 2016) (citing *Levin*); *Garling v. EPA*, 849 F.3d 1289, 1294 (10th Cir. 2017) ("State substantive law applies to suits brought against the United States under the FTCA."); *Hill v. SmithKline Beecham Corp.*, 393 F.3d 1111, 1117 (10th Cir. 2004) (same). Federal courts in Maryland are extremely familiar with Maryland tort law and better able to apply it than courts in New Jersey. Nevertheless, Plaintiffs respond that the parties "likely will stipulate" liability, and thus substantive state law will not matter. That argument lacks merit, since Defendants plan to make a "full defense." *See* Reply Br., at 17. As a legal matter, the Complaint names a number of private parties among whom liability may need to be apportioned or shared, and Maryland's substantive law of damages will apply.

13

Defendants finally stress that transfer is appropriate because New Jersey courts are particularly congested. In general, "relative congestion . . . is not a factor of great importance" on a transfer motion. *Kisko v. Penn. Cent. Transp., Co.*, 408 F. Supp. 984, 987 (M.D. Pa. 1976); *Andrews*, 2008 WL 687255, at *4 ("[T]his Court does not grant the relative caseload of different districts great importance."). To the extent that it is important, conflicting data will not "tip the balance" for either party, nor will statistical evidence indicating one venue is more congested than another if "the reality is that [both venues] are [] busy districts." *Eastman v. First Data Corp.*, No. 10-5860, 2011 WL 1327707, at *5 (D.N.J. April 5, 2011). That said, there is no dispute that the District of New Jersey is significantly busier than the District of Maryland. For the year ending on September 30, 2019, New Jersey had more civil filings than any other district, the second most pending cases, and the third most pending cases at least three years old.[8] Maryland ranked 29th, 32nd, and 61st in those categories, respectively. *See Solomon*, 472 F.2d at 1047 (referring to annual court statistics in analyzing transfer); *Andrews*, 2008 WL 687255, at *4 (taking similar notice of relative court congestion); *Shell Oil*, 917 F. Supp. at 329-330 ("The relative backlog and caseloads of the two districts also supports a transfer of venue."); *Hardaway Constructors*, 583 F. Supp. at 621-22 (transferring venue from New Jersey to Maryland in part because of Maryland's "lighter" docket). On balance, the public interest factors also favor transfer.

## IV. CONCLUSION

After considering the relevant private and public interest factors under *Jumara*, the Court finds that Defendants have demonstrated transfer is appropriate. *See* 28 U.S.C. 1404(a). Defendants' Motion to Transfer is therefore **GRANTED**. Defendants' Motion to Dismiss and

---

[8] Federal Court Management Statistics–National Judicial Caseload Profile (Sept. 30, 2019), http://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distcomparison1231.2016.pdf.

14

Plaintiffs' cross-motion to enlarge their time to serve the United States are **DENIED** without prejudice. These motions may be re-filed in Maryland.  This matter is transferred to the United States District Court for the District of Maryland.

**DATED**:  July 2, 2020  /s/ Freda L. Wolfson
Freda L. Wolfson
U.S. Chief District Judge